Black Gold Petroleum Company, Oklahoma City, Oklahoma v. Commissioner.
Black Gold Petroleum Co. v. Commissioner
Docket No. 112188.
United States Tax Court
1944 Tax Ct. Memo LEXIS 325; 3 T.C.M. (CCH) 241; T.C.M. (RIA) 44088; March 21, 1944
*325 A. E. Hill, Esq., 534, Commerce Exchange Bldg., Oklahoma City, Okla., for the petitioner. E. G. Siebers, Esq., for the respondent. ARNOLD Memorandum Findings of Fact and Opinion ARNOLD, Judge: The petitioner is an Arizona corporation with offices in Oklahoma City, Oklahoma. It filed its income tax return for the calendar year 1939 with the collector of internal revenue for the district of Oklahoma, showing a net loss of $101,372.55. On said return it deducted losses amounting to $43,151.22, arising out of the abandonment in 1939 of two oil and gas leases, which the respondent subsequently disallowed. As a result of said adjustment, and other adjustments conceded by petitioner, the respondent determined that petitioner had a taxable net income of $36,168.98 for 1939 and computed a deficiency thereon of $6,597.62 in income tax and $1,444.66 in excess profits tax. If respondent erred in disallowing the claimed losses upon abandonment of the two leases, there will be no deficiency for 1939. Findings of Fact Early in 1938, the petitioner acquired two adjoining oil and gas leases in Young County, Texas, comprising about 530 acres, referred to as the Alberts and Cearley leases. The consideration *326 therefor was petitioner's agreement to drill thereon, develop the premises and pay certain royalties. The main producing horizon underlying the area in which the leases were located was the Caddo Lime, which is highly variable, being very porous in some spots and very tight in others. In February 1938 the petitioner completed a well on the Alberts lease and in April 1938 it completed a well on the Cearley lease, both to the Caddo Lime, about 4,150 feet deep. Each well was acidized when completed with 20,000 gallons of acid. Both initially produced oil, but soon gas appeared and the ratio of gas to oil rapidly increased to the point where the amount of natural gas wasted in recovering a barrel of oil exceeded the limit permitted by the rules of the Texas Railroad Commission. In August or September 1938, the wells were capped but no equipment was moved off the leases and petitioner then had no intention of abandoning or forfeiting them. In tests conducted apparently about that time the Alberts well was gauged at approximately 1,800,000 cubic feet of natural gas per 24 hours, with 1.10 gallons of gasoline per thousand cubic feet, and the Cearley well was gauged at approximately 6 million *327 cubic feet of natural gas per 24 hours, with 0.816 gallons of gasoline per thousand cubic feet. Plans were considered to transport a plant from Oklahoma City, Oklahoma, and adapt it as a casing-head gas plant at an approximate cost of $100,000; to drill the wells about 400 feet deeper to the Marble Falls Sand, at an approximate cost of $4,000 per well; to test the Strawn Sand, which had been passed in drilling to the Caddo Lime; and to drill elsewhere on the leases. At the time, petitioner was engaged in extensive drilling operations elsewhere, was heavily in debt, and its income had been considerably reduced by a drop in the price of oil in October or November 1938. The wells were operated at a loss in 1938. Efforts in 1938 to borrow sufficient funds to transport and erect the casing-head gas plant and to conduct further operations on the leases were unsuccessful. By February 1939 petitioner was convinced that the money was unobtainable and, after further tests had been made, both wells were plugged in March of that year, the leases were forfeited and abandoned subsequently in the year, and the casing and equipment removed. Oil produced from the wells before they were capped was *328 sold as follows: ALBERTS WELL
CEARLEY WELL
1938:
Month
Bbls.
Amount
Bbls.
Amount
Feb.
690
$ 823.53
Mar.
592
692.23
Apr.
340
$ 400.74
May
205
245.66
839
1,006.26
June
504
599.61
July
280
329.87
Aug.
57
69.46
.16
Sept.
135
156.04
Total for 1938
1,544
$1,830.88
2,098
$2,492.68
1939:
Apr.
15
11.40
97
82.31
TOTAL BOTH YEARS
1,559
$1,842.28
2,195
$2,574.99 No oil was produced from the leases after 1938. The oil sold in 1939 was the residue in the tanks and gathering lines. As of the end of 1938, development in the immediate vicinity of the Alberts and Cearley leases indicated that prospects for obtaining commercial production of oil from the leases were poor and there was no market in the vicinity for the gas. Subsequent to petitioner's abandonment of the leases, two wells were drilled by other parties on the Cearley land, one to the Caddo Line in 1939, which was abandoned in 1940, and the other to the Strawn Sand in 1940. The latter was a gas well. On an amended return for 1938, filed April 17, 1939, after the wells were plugged, the petitioner estimated the ultimate oil reserve for the Alberts *329 well as 56,250 barrels, and on the Cearley wells as 97,750 barrels, and computed depreciation on equipment accordingly by the unit of production method. No depletion deduction was claimed. For the purpose of computing allowable depreciation and depletion for 1938 and 1939, the respondent estimated that the initial oil reserves were equal to the oil actually produced, namely, 1,559.20 barrels for the Alberts lease and 2,193.09 barrels for the Cearley lease. [1]
The $20,173.51 claimed loss on abandonment of the Alberts lease, and the $22,977.71 claimed loss on abandonment of the Cealey lease, as reflected on petitioner's books and returns for 1938 and 1939, were computed as follows: ALBERTS LEASE
Cost of lease
$17,811.96
Less: - Depletion, 1938
475.27
Loss on leasehold investment
$17,336.69
Cost of equipment
6,272.17
Less: - Depreciation, 1938
$ 155.04
Realized salvage, 1939
3,280.31
3,435.35
Loss on equipment investment
2,836.82
Total abandonment loss, 1939
$20,173.51
CEARLEY LEASE
Cost of lease
$18,307.38
Less: - Depletion, 1938
391.91
Loss on leasehold investment
$17,915.47
Cost of equipment
9,822.26
Less: - Depreciation, 1938
$ 197.63
Realized salvage, 1939
4,562.39
4,760.02
Loss on equipment investment
5,062.24
Total abandonment loss, 1939
$22,977.71
*330 The respondent's disallowance of the claimed losses was based upon the following computations: ALBERTS LEASE
Cost of lease
$17,811.96
Less allowed depletion
Year 1938
$17,644.83
Year 1939
167.13
Total allowed deductions
17,811.96
Loss on leasehold investment
None
Cost of equipment
6,272.17
Less allowed depreciation: Year 1938
$2,962.96
Year 1939
28.90
Less realized salvage in 1939
3,280.31
Total allowed deductions
6,272.17
Loss on equipment investment
None
Total property abandonment loss
None
CEARLEY LEASE
Cost of lease
$18,307.38
Less allowed depletion/: Year 1938
$17,496.90
Year 1939
810.48
Total allowed deduction
18,307.38
Loss on leasehold investment
None
Cost of equipment
9,822.26
Less allowed depreciation: Year 1938
$5,027.01
Year 1939
232.86
Less realized salvage in 1939
4,562.39
Total allowed deductions
9,822.26
Loss on equipment investment
None
Total property abandonment loss
None
The commercial reserves in the leases in ques-
tion were depleted at the end of 1938.
Opinion The respondent argues that the cost of leasehold and equipment are capital investments, recoverable through depletion *331 and depreciation; that such depletion and depreciation having been computed by both parties by the unit of production method must be bottomed on the correct reserves; and that at the time of the plugging of the wells in March 1939, and forfeiture of the leases in the same year, all of the investment in the leasehold and equipment had been returned to petitioner in the form of depletion and depreciation, except the amounts which were allocable to the salvaged equipment in 1939 following the plugging of the wells, leaving nothing to be charged off as abandonment loss. To reach this result, respondent estimated the oil reserves as being equal to the oil produced in 1938 and he recomputed the allowable depreciation and depletion for 1938 and 1939 accordingly. There is no controversy over the fact that abandonment and forfeiture of the leases took place in 1939. The parties are also in agreement as to the original cost basis of the property, the actual production and the salvage value of the equipment upon abandonment. What we must determine is the adjusted basis of the property for determining loss, if any, upon abandonment. Section 113 (b)(1)(B) of the Revenue Act of 1938 [2] provides *332 in part that the basis for determining loss upon the disposition of property shall be the basis determined under section 113 (a), adjusted for depreciation and depletion to the extent allowed, but not less than the amount allowable. The respondent determined that the adjusted basis of the property at the time of abandonment was equal to the salvage value of the equipment and, therefore, that there was no loss. This resulted from the respondent's recomputation of the amount of depreciation and depletion allowable for 1938 and 1939, which, in turn, was based upon respondent's rejection of petitioner's estimate of the available oil reserves for 1938. *333 Respondent's expert witnesses testified that, considering all of the facts available as of the end of 1938, all of the oil capable of being produced from the two wells had been extracted therefrom; that erection of a casing-head gas plant at a cost of $100,000 was impractical from a business standpoint; and that there were no prospects for obtaining oil in commercial quantities elsewhere on the leases. Considering the entire record we are of the opinion that the evidence is not sufficient to overcome the presumptive correctness of respondent's determination and we have found as a fact that the oil reserves were exhausted in 1938. As we understand petitioner's contention, it seeks to justify its estimate of reserves by showing the existence of gas in the two wells capable of producing casing-head gasoline. There was no market for the gas and none was sold. There are not sufficient data in the record upon which to base an estimate of commercial reserves of either oil or gas in excess of that determined by the Commissioner. We, therefore, conclude that the respondent correctly computed the allowable depreciation and depletion for 1938 and 1939, and that the adjusted basis for the Alberts *334 lease as of the time of abandonment was $3,280.31, and that for the Cearley lease at that time was $4,562.39. As these amounts equalled the salvage value of the equipment on the leases and were recovered by petitioner when the leases were abandoned, we conclude and hold that the petitioner sustained no loss in 1939 upon abandonment of the Alberts and Cearley leases. Decision will be entered for the respondent. Footnotes
1. The discrepancy between these production figures and those given in the table of sales, supra, ↩ is not explained in the record.
2. SEC. 113. ADJUSTED BASIS FOR DETERMINING GAIN OR LOSS. * * * * *
(b) Adjusted Basis. - The adjusted basis for determining the gain or loss from the sale or other disposition of property, whenever acquired, shall be the basis determined under subsection (a), adjusted as hereinafter provided. (1) General Rule. - Proper adjustment in respect of the property shall in all cases be made - * * * * *
(B) in respect of any period since February 28, 1913, for exhaustion, wear and tear, obsolescence, amortization, and depletion, to the extent allowed (but not less than the amount allowable) under this Act or prior income tax laws. Where for any taxable year prior to the taxable year 1932 the depletion allowance was based on discovery value of a percentage of income, then the adjustment for depletion for such year shall be based on the depletion which would have been allowable for such year if computed without reference to discovery value or a percentage of income;↩